**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **RACHEL CAVAZOS,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | **CIVIL NO.** |
| **vs.** | § | **SA-17-CV-00432-FB** |
| | § | |
| **HOUSING AUTHORITY OF BEXAR** | § | |
| **COUNTY,** | § | |
| | § | |
| *Defendant.* | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns the motions for partial summary judgment filed by Plaintiff [#21] and Defendant [#22]. Also before the Court are Plaintiff's response to Defendant's motion [#27] and Defendant's reply in support of its motion [#30], as well as Defendant's response to Plaintiff's motion [#28] and Plaintiff's reply in support of her motion [#29]. On April 9, 2018, the Honorable Fred Biery referred all pre-trial proceedings in this case to the undersigned for disposition pursuant to Federal Rule of Civil Procedure 72 and Rules CV-72 and 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas [#13]. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that the cross-motions for partial summary judgment be **DENIED.**

## I. Background

This is an employment discrimination case filed by Plaintiff Rachel Cavazos ("Plaintiff") against her employer, the Housing Authority of Bexar County ("HABC"). In this lawsuit, Plaintiff asserts the following claims:

1

(1)     HABC discriminated against her based on her sex when it paid her less than men who performed the same job as her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the Equal Pay Act of 1963 ("the EPA"), 20 U.S.C. § 206(d)(1), the Lilly Ledbetter Fair Pay Act of 2009, 42 U.S.C. § 2000e-5(e)(3)(A),  and the Texas Commission on Human Rights Act ("the TCHRA"), Tex. Lab. Code Ann. § 21.051 (West 2017).[1]

(2)     HABC subjected her to a hostile work environment because of her sex in violation of Title VII and the TCHRA.

(3)     HABC retaliated against her for complaining about its discriminatory compensation practices in violation of Title VII, the EPA, and the TCHRA.

This Report and Recommendation and the pending cross-motions for partial summary judgment concern only the first set of claims under Title VII and the EPA—Plaintiff's claims alleging discriminatory compensation practices—not Plaintiff's retaliation and hostile work environment claims, which will proceed to trial, as will all of her claims under the TCHRA, since HABC did not move for summary judgment on those.

Plaintiff has properly exhausted her claims.  On March 22, 2015, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("the EEOC"), alleging various acts of wage discrimination.  (Compl. [#1] at ¶ 6.)  On May 15, 2017, Plaintiff filed a complaint against HABC in this Court [#1].

---

[1] The parties refer to this statute as "the Texas Commission on Human Rights Act" or "the TCHRA," which is technically inaccurate because over a decade ago, the Texas Commission on Human Rights was abolished and its powers and duties were transferred to the Civil Rights Division of the Texas Workforce Commission.  *See* Tex. Lab. Code Ann. § 21.0015; *see also Texas Dep't of Family & Protective Servs. v. Howard*, 429 S.W.3d 782, 786 n.2 (Tex. App.—Dallas 2014, pet. denied) (noting that the appellate court has declined to refer to Chapter 21 claims as TCHRA claims since the abolition of the Commission on Human Rights in 2004).  But the Texas Supreme Court continues to refer to Chapter 21 claims as TCHRA claims and, therefore, so does the undersigned.  *See Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 798 n.1 (Tex. 2010) (recognizing that the abolition of the Commission on Human Rights renders "TCHRA" a misnomer but indicating its intention to continue to use "the TCHRA" interchangeably with "Chapter 21").

## II.  Legal Standard

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c).  A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp.*, 477 U.S. at 323. Once the movant carries its burden, the burden shifts to the non-moving party to establish the existence of a genuine issue for trial.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995).  The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial.  *See Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000).  The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence.  *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).  The Court will view the summary judgment evidence in the light most favorable to the non-movant.  *See Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

"After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F.3d at 174.  However, if the party moving for summary judgment fails to satisfy

its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the non-movant's response. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

### III.  Facts Established by the Summary Judgment Record

Plaintiff worked for HABC from November 2010 to May 2016.  This dispute centers around her application for the position of executive director of HABC and her compensation while serving as the agency's interim (and acting) executive director.  The parties offer different versions of the facts.  However, the following facts are undisputed by the parties for the purposes of the cross-motions for partial summary judgment.

*Plaintiff's Compensation History.*  HABC hired Plaintiff on November 1, 2010. (Cavazos Dep. [#21-2] at 3.)  Plaintiff held different positions and received several raises in compensation between 2010 and 2016.  (*Id.* at 3–12.)  Her initial salary in November 2010 was $35,402.  (*Id.* at 3.)  She received a raise of $4,598 in August 2011, increasing her salary to $40,000.  (Cavazos' Personnel Records [#23-4] at 2, 8.)  Plaintiff received two additional raises totaling $10,000 in 2012, increasing her salary to $50,000.  (*Id.* at 2, 5–6.)  She received a raise of $15,000 in September 2013, increasing her salary to $65,000.  (*Id.* at 2, 3.)  Finally, in August 2015, when she was named interim executive director, she received a raise of $25,000, increasing her salary to $90,000, the salary she earned until her resignation in May 2016. (Cavazos Dep. [#21-2] at 18.)  In total, Plaintiff received $54,598 in raises during her five and a half years of employment at HABC.

*The OIG's Memorandum and the Search for a New Executive Director.*  On June 11, 2015, the U.S. Department of Housing and Urban Development's ("HUD") Officer of Inspector General ("OIG") issued a memorandum to the Acting Director of the San Antonio Housing

Authority and the Director of HUD's Departmental Enforcement Center, which found that HABC had failed to exercise proper oversight of its HUD-funded programs. (OIG's Memorandum[2] [#23-1] at 4.) In response to this memorandum, Albert "Buddy" Aleman resigned as executive director of HABC, effective August 19, 2015. (Tr. of Aug. 19, 2015, Board Meeting [#21-11] at 11.). Also, HABC commenced a procurement process to identify and hire a new executive director. (Sanchez Dep. [#21-5] at 6.) A committee was appointed to oversee the procurement process, consisting of HABC Board of Commissioners ("Board") members Frank Moreno and Choco Meza, as well as Aurora Sanchez, a consultant who was hired by Bexar County Judge Nelson Wolff to address the concerns raised in the OIG's memorandum. (*Id.* at 7.) HABC received twenty-two applications for the position of executive director. (*Id.* at 13.) Following interviews with eight out of the twenty-two applicants, the search committee ranked Timothy Alcott, an attorney for the San Antonio Housing Authority, as its first choice and Plaintiff as its second choice for the position. (*Id.* at 14–16.)

*Wage History for the Executive Director Position.* Mr. Aleman, the executive director who resigned after the release of the OIG's memorandum, served as the agency's executive director for five years, for which he was paid an annual salary of $150,000, plus benefits and bonuses. (*Id.* at 19.) His predecessor, General Alfred A. Valenzuela, was also paid an annual salary of $150,000. (Valenzuela's January 3, 2011, Employment Contract [#27-20] at 3.) (Both Mr. Aleman and General Valenzuela are men.) After accepting Mr. Aleman's resignation, the Board accepted a motion to make an offer to the search committee's first-choice candidate and,

---

[2] The OIG's memorandum is attached as Exhibit 1 to the Appendix to Defendant's Motion for Summary Judgment [#23] and is available at https://www.hudoig.gov/reports-publications/memorandums/housing-authority-bexar-county-tx-did-not-operate-its-hud-public.

in the event that the first-choice candidate declines the offer, to the second-choice candidate. (Tr. of August 19, 2015, Board Meeting [#21-11] at 11.)

*The Board's Negotiations with Mr. Alcott.* After Mr. Alcott was chosen as the first-choice candidate for the position, the Board offered him a salary of $150,000 per year to serve as HABC's executive director. (Sanchez Dep. [#21-5] at 21, 36.) Mr. Alcott countered with a salary of $170,000 per year, plus benefits. (*Id.* at 22.) Negotiations ultimately fell through, and Plaintiff, as the second-choice candidate, was asked to submit a proposed employment contract. (*Id.* at 31.) Plaintiff complied, and in her proposed employment contract, requested a salary of $120,000 for the executive director position. (Cavazos Dep. [#21-2] at 20–21; Cavazos' Proposed Employment Contract [#23-7] at 5.)

*Plaintiff's Tenure as Interim Executive Director.* On August 27, 2015, while negotiations with Mr. Alcott were ongoing, Plaintiff was appointed interim executive director of HABC. (Tr. of Aug. 27, 2015, Board Meeting [#21-12] at 54–56.) In addition, Plaintiff received a raise of $25,000, increasing her salary to $90,000. (*Id.* at 56.) Before she accepted the position, Plaintiff was told that it would last only thirty days. (*Id.* at 55.) However, on October 5, 2015, and again on November 19, 2015, the Board voted to extend Plaintiff's tenure as interim executive director by thirty days. (Minutes of Sept. 22, 2015, Board Meeting [#23-8] at 19; Minutes of Nov. 19, 2015, Board Meeting [#23-10] at 6–7.) At the January 26, 2016, Board meeting, no action was taken regarding Plaintiff's status as interim executive director. (Minutes of Jan. 26, 2016, Board Meeting [#24-1] at 12.) On February 18, 2016, Plaintiff informed Chairman of the Board Kirk Francis of her intent to resign as interim executive director. (Feb. 18, 2016, Email from Cavazos to Francis [#23-2] at 2.) On February 23, 2016, an agreement was reached to keep Plaintiff as interim executive director by which the Board agreed to increase her salary from $90,000 to

$120,000 and to pay her a one-time stipend of $9,300, subjection to the execution of a release of claims against HABC. (Francis Dep. [#30-1] at ¶ 23.) However, the Board meeting was adjourned before a formal vote was taken on the matter. (Mar. 13, 2016, Email from Cavazos to Francis [#24-8] at 6.) On March 9, 2016, Plaintiff requested that the stipend be increased to $11,538.40. (Mar. 9, 2016, Email from Cavazos to Sanchez [#28-7] at 44–45.) Plaintiff was informed that her request for a $2,238.40 increase in the stipend constituted a rejection of the Board's offer and the submission of a counter-offer, which would need to be approved by the Board. (Mar. 11, 2019, Email from Sanchez to Cavazos [#28-7] at 44.) On May 4, 2016, Plaintiff submitted a letter of resignation, effective May 31, 2016, to the Board. (Letter of Resignation [#24-13] at 2–3.)

## IV. Analysis

Because genuine issues of material fact preclude summary judgment for either party in this matter, the cross-motions for summary judgment on Plaintiff's wage discrimination claims should be denied.

Plaintiff brings claims for sex-based discrimination under the EPA, Title VII, and the TCHRA. All three statutes prohibit employers from having different pay rates based on, among other things, sex; however, they are not co-extensive in scope. Most notably, the EPA outlaws disparate pay of the sexes when they perform equal work and places the burden on employers to prove that such disparities are due to factors other than sex. Title VII and the TCHRA, on the other hand, require a plaintiff alleging sex-based wage discrimination to prove the pay disparity is because of sex, and these statutes also prohibit discrimination in various aspects of employment, not just pay.

In any event, in this case, Plaintiff's wage discrimination claims under all three statutes should proceed to trial. HABC did not move for summary judgment on Plaintiff's TCHRA claims. And summary judgment is inappropriate for either party on Plaintiff's EPA claim because genuine issues of material fact exist as to whether (1) Plaintiff's duties as interim executive director were the same as or substantially similar to those performed by the two previous executive directors; and (2) whether the temporary nature of the position was a "factor other than sex" that accounted for and justified the disparity in pay. Finally, summary judgment is inappropriate on Plaintiff's Title VII claim because genuine issues of material fact exist as to whether (1) the two previous executive directors were similarly situated to Plaintiff; and (2) whether HABC's proffered non-discriminatory reasons for its actions were pretextual.

## A.      EPA Wage Discrimination Claims

The EPA prohibits discriminating in pay based on sex and requires that employers pay employees, regardless of their sex, equal pay for equal work. *See* 29 U.S.C. § 206(d)(1); *see also Corning Glass Works v. Brennan*, 417 U.S. 188, 190 (1974) (stating that the EPA requires "equal pay for equal work regardless of sex"). The plaintiff bears the initial burden of making out a *prima facie* case of discrimination under the EPA "by showing that an employer compensates employees differently for equal work." *King v. Univ. Healthcare Sys., L.C.*, 645 F.3d 713, 723 (5th Cir. 2011). To establish a *prima facie* case under the EPA, a plaintiff must show that "(1) her employer is subject to the Act; (2) she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and (3) she was paid less than the employee of the opposite sex providing the basis of comparison." *Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir. 1993) (citing *Jones v. Flagship Int'l*, 793 F.2d 714, 722–23 (5th Cir. 1986)).

Once a plaintiff has made her *prima facie* case by showing that an employer compensates employees differently for equal work, the burden of persuasion shifts to the employer to show by a preponderance of the evidence that the differential in pay was made pursuant to one of the four affirmative defenses set forth in the EPA. *See King*, 645 F.3d at 723; *Siler-Khodr v. Univ. of Texas Health Sci. Ctr. San Antonio*, 261 F.3d 542, 546 (5th Cir. 2001); *Flagship Int'l*, 739 F.2d at 772 (holding that the EPA's four enumerated exceptions "are affirmative defenses on which the employer has the burden both of production and of persuasion"). Those include: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1).

Both parties' motions for partial summary judgment should be denied. Plaintiff is not entitled to summary judgment on her EPA claim because she has not established as a matter of law that she was paid less for performing substantially equal work. But HABC has not proved the converse—that Plaintiff cannot prove as a matter of law that she was paid less for doing substantially equal work. In other words, this question involves a material issue of fact that precludes summary judgment for either party. Nor has HBC established an affirmative defense as a matter of law. HABC's motion for summary judgment on Plaintiff's EPA claim on that basis should, therefore, also de denied.

1.  The record gives rise to a material fact dispute on the question of whether Plaintiff and the previous executive directors performed substantially equal work, which precludes granting summary judgment for Plaintiff or HABC on the EPA claim.

Plaintiff's motion for summary judgment on her EPA claim should be denied because she has not established as a matter of law that she and the comparators that she has identified performed substantially equal work. As discussed above, to establish an EPA violation, a

plaintiff must show, among other things, that she was paid less than male comparators, which, for purposes of the EPA, would be men who "performed work in a position requiring equal skill, effort, and responsibility under similar working conditions" to the plaintiff. *Chance*, 984 F.2d at 153 (citing *Flagship Int'l*, 793 F.2d at 722).

Here, Plaintiff has proposed three comparators—Mr. Aleman, General Valenzuela, and Mr. Alcott—in support of her EPA claim, but only two are arguably appropriate. Mr. Aleman and General Valenzuela were the two preceding executive directors and, therefore, could qualify as comparators for purposes of the EPA. *See Bourque v. Powell Electrical Mfg. Co.*, 617 F.2d 61, 64 (5th Cir. 1980) (holding that a female employee made out a *prima facie* claim under the EPA by comparing her salary to her predecessor's). But Mr. Alcott was a *candidate* for the executive director position after Aleman's departure. Although he was offered the position, he declined it. Thus, he never performed any work for HABC, let alone work that could be deemed the same or substantially similar to work performed by Plaintiff. *Cf. Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1137 (5th Cir. 1983) (using the plaintiff's successor as a comparator where the successor was hired and performed work that could be compared to the plaintiff's). Accordingly, Mr. Alcott is not an appropriate comparator for purposes of Plaintiff's EPA claim.[3]

Although Mr. Aleman and General Valenzuela, the two previous executive directors, could be appropriate comparators, Plaintiff has nevertheless failed to establish an essential element of her EPA claim as a matter of law and, therefore, is not entitled to summary judgment. More specifically, HABC has presented sufficient evidence in response to Plaintiff's motion to generate a fact issue on whether the work Mr. Aleman and General Valenzuela performed as

---

[3] As discussed below, Mr. Alcott is, however, a comparator for purposes of Plaintiff's Title VII claim.

executive director and the work Plaintiff performed as interim and acting executive director required equal skill, effort, and responsibility under similar working conditions.

As noted above, Plaintiff has the burden of showing equal work. The Fifth Circuit has formulated the following equality standard:

> When Congress enacted the Equal Pay Act, it substituted the word "equal" for "comparable" to show that the jobs involved should be virtually identical, that is, they would be very much alike or closely related to each other. The restrictions in the Act were meant to apply only to jobs that are substantially identical or equal.

*Brennan v. City Stores, Inc.*, 479 F.2d 235, 238 (5th Cir. 1973) (internal quotation marks omitted); s*ee also Hodgson v. Golden Isles Convalescent Homes, Inc.*, 468 F.2d 1256, 1258 (5th Cir. 1972) ("It is not merely comparable skill and responsibility that Congress sought to address, but a substantial identity of job functions."). Thus, even if Plaintiff held the same position (executive director, as opposed to interim/acting executive director) as Mr. Aleman and General Valenzuela, if substantial differences existed in the amount or degree of effort required to be expended in the performance of the job, the EPA does not apply. *See* 29 C.F.R. § 1620.16 (West 2019) (stating that "[w]here substantial differences exist in the amount or degree of effort required to be expended in the performance of jobs, the equal pay standard cannot apply even though the jobs may be equal in all other respects").

HABC's summary judgment evidence supports HABC's position (but does not establish it as a matter of law) that Plaintiff's duties as interim executive director were not the same as or substantially similar to those performed by the two previous executive directors. Mr. Aleman testified that, in addition to the day-to-day management of HABC, he and General Valenzuela also administered various non-HUD programs. (Second Aleman Decl. [#28-2] at ¶ 2.) Mr. Aleman also testified that his and General Valenzuela's efforts to develop additional, non-HUD revenue streams for HABC were a factor in determining their salary and that their salaries were

charged to both HUD and non-HUD programs. (*Id.*) The OIG's memorandum found that HABC could not support its allocation of employee and contract salaries. (OIG's Memorandum [#23-1] at 4.) The improper cost allocations occurred, in part, because HABC lacked timesheets for employees working on more than one program. (*Id.*) In response to the OIG's memorandum, the Board decided that the new executive director would operate the HUD programs exclusively. (Second Aleman Decl. [#28-2] at ¶ 2.) The parties dispute the significance in this change in the position and whether the position after these changes continued to require equal skill, effort, and responsibility under similar working conditions to the position prior to the changes. Importantly, it is undisputed that while Plaintiff held the position of interim executive director, she did not administer any non-HUD programs or attempt to develop non-HUD revenue streams, unlike her two male predecessors. (Francis Dep. [#28-4] at 9.) In other words, a reasonable jury could find that the duties of Mr. Aleman and General Valenzuela were distinguishable from those of Plaintiff.

Accordingly, a genuine issue of material fact exists as to whether Plaintiff's duties were "virtually identical," *Brennan*, 479 F.2d at 238, to those of her comparators and, therefore, whether her position required "equal skill, effort, and responsibility under similar working conditions," *Chance*, 984 F.2d at 153. Because Plaintiff failed to make a showing sufficient to establish the existence of an element essential to her case, summary judgment on Plaintiff's EPA claim is not proper. *See Celotex Corp.*, 477 U.S. at 322; *Fields v. Stephen F. Austin State University*, 611 F. App'x 830 (5th Cir. 2015).

Conversely, because HABC has not established that Plaintiff cannot establish this element as a matter of law, it is not entitled to summary judgment on the EPA claim on this basis either. *See Celotex*, 477 U.S. at 322. Plaintiff's summary judgment evidence supports her

position (but does not establish it as a matter of law) that her duties as interim executive director were the same as or substantially similar to those performed by the two previous executive directors. Plaintiff notes that Mr. Aleman was not involved in the procurement process and claims that the allegations in his second declaration are conclusory and purely speculative. Plaintiff also notes that none of the Board members testified that the new executive director's salary would be lower for any of the reasons asserted in Mr. Aleman's second declaration. Plaintiff directs the Court's attentions to statements made by Ms. Sanchez, a consultant for Bexar County, Texas. Ms. Sanchez testified that when discussing what would be an appropriate salary for the position, the Board discussed that the new executive director should be paid at least $150,000, as that is what Mr. Aleman had been paid. (Sanchez Dep. [#21-5] at 18–19.) Ms. Sanchez also testified that she agreed with Commissioner Meza's statement that "the only reason the pay differential was there was because Ms. Cavazos was a woman." (*Id.* at 34.) In addition, in response to the question of whether the new executive director position would require an equal amount of skill, effort, and responsibility as the executive director position as it existed under Mr. Aleman, Commissioner Moreno responded "Obviously. Obviously, yes." (Moreno Dep. [#21-23] at 2.) Taken together, these statements raise a genuine issue of material fact for trial as to whether Plaintiff's duties as interim executive director were the same as or substantially similar to those performed by her two male predecessors. Given the conflicting evidence in the record, the jury should decide whether Plaintiff has proved the essential elements of her EPA claim.

2.    HABC has not established an EPA affirmative defense as a matter of law.

Neither is HABC entitled to summary judgment on Plaintiff's EPA claim on the ground that it has proved an affirmative defense as a matter of law. As stated above, the employer bears

the burden of production and persuasion on the affirmative defenses; so, even if the summary judgment record establishes an employee's *prima facie* case as a matter of law, the employer is entitled to summary judgment if the record also establishes an affirmative defense as a matter of law. Here, HABC argues that the record conclusively establishes that a "factor other than sex," one of the affirmative defenses in Section 206(d)(1), justifies the pay disparity between Plaintiff and the previous executive directors. But a material fact dispute exists on this issue, and HABC's motion for summary judgment on the EPA claim on this basis should, therefore, be denied as well.

HABC argues that the temporary nature of the interim executive director position was a "factor other than sex" that justified Mr. Aleman's and General Valenzuela's higher salaries. While the Fifth Circuit has not explicitly addressed this issue, courts in other circuits have held that the temporary nature of a position is a "factor other than sex" sufficient to justify an otherwise illegal pay disparity, "provided that the position was temporary in fact and that the employee in that position knew it was temporary." *Joyner v. Town of Elberta*, 22 F. Supp. 3d 1201, 1209 (S.D. Ala. 2014) (quoting *Nelson v. Chattahoochee Valley Hosp. Soc.*, 731 F. Supp. 2d 1217, 1236 (M.D. Ala. 2010)); *see also Gaston v. Caugherty*, No. CV 14-1436, 2015 WL 8601232, at *10 (W.D. Pa. Dec. 14, 2015) (*citing Joyner*, 22 F. Supp. 3d at 1209). But, the defense that the position was temporary in nature is not absolute. The EEOC has cautioned that when the temporary position lasts longer than one month, it "[g]enerally . . . will raise questions as to whether the reassignment was in fact intended to be temporary." 29 C.F.R. § 1620.26(b).

HABC claims that Plaintiff's appointment as interim executive director was temporary in fact and that Plaintiff knew it was temporary. In support of its position, HABC notes that Plaintiff was appointed interim executive director while negotiations between the Board and Mr.

Alcott were ongoing. (Tr. of August 27, 2015, Board Meeting [#21-12] at 52–53.) Furthermore, HABC points out that before she accepted the position, Plaintiff was told that it would last only thirty days. (*Id.* at 53.)

However, the evidence does not establish as a matter of law that Plaintiff's performance of executive director duties can be considered a temporary re-assignment, and Plaintiff disputes HABC's classification of the interim executive director position as temporary. There is evidence in the record that before she accepted the position, Plaintiff was told that she was the search committee's second-choice candidate and that if Mr. Alcott declined the position, she would "be automatically or semi-automatically promoted to the ED." (*Id.*) After Mr. Alcott declined the position, Plaintiff was asked to submit a proposed employment contract, which she did on September 22, 2015. (Cavazos' Proposed Employment Contract [#23-7] at 3–8.) Yet, Plaintiff was not "automatically or semi-automatically" named the new executive director; rather, on October 5, 2015, and again on November 19, 2015, the Board voted to extend Plaintiff's tenure as interim executive director by thirty days. (Minutes of Sept. 22, 2015, Board Meeting [#23-8] at 19; Minutes of Nov. 19, 2015, Board Meeting [#23-10] at 6–7.) Additionally, at the January 26, 2016, Board meeting, no action was taken regarding Plaintiff's status as interim executive director. (Minutes of Jan. 26, 2016, Board Meeting [#24-1] at 12.) In fact, Plaintiff held the position of interim executive director from August 27, 2015, until she resigned on May 31, 2016, a period of about nine months. Essentially, then, Plaintiff claims that, even if HABC initially intended for the interim executive director position to be temporary, it subsequently became clear that the position would not, in fact, be temporary and that, though still holding the title of interim executive director, she was acting as the *de facto* executive director.

Therefore, while the "interim" nature of the position might theoretically explain the pay disparity, reasonable minds could disagree as to whether Plaintiff's duration of employment as interim executive director, which lasted about nine months, could accurately be characterized as interim or temporary. This is a question for the jury to resolve.

In sum, genuine issues of material fact preclude summary judgment for HABC on its affirmative defense to Plaintiff's EPA claim.

**B.      Title VII Pay Discrimination Claim**

HABC's motion for summary judgment on Plaintiff's Title VII pay discrimination claims should be denied as well. Title VII prohibits discrimination on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). A plaintiff can prove intentional discrimination through either direct or circumstantial evidence. *See Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 235 (5th Cir. 2016). When a plaintiff offers only circumstantial evidence, as here, the *McDonnell Douglas* framework requires the plaintiff to establish a *prima facie* case of discrimination, which, if established, raises a presumption of discrimination. *See Rutherford v. Harris Cty., Tex.*, 197 F.3d 173, 179–80 (5th Cir. 1999) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973)). To establish a *prima facie* case of sex discrimination, the plaintiff must show that (1) she is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) similarly situated men were treated more favorably. *See Willis v. Coca Cola Enters., Inc.*, 445 F.3d 413, 420 (5th Cir. 2006).

A plaintiff's *prima facie* case creates an inference of discrimination that shifts the burden of production to the defendant to come forward with evidence that the adverse employment action was taken for a legitimate, non-discriminatory reason. *See Rutherford*, 197 F.3d at 180. This burden is one of production, not persuasion, and can involve no assessment of credibility.

*See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). Once the employer articulates a legitimate, non-discriminatory reason and produces competent summary judgment evidence in support of that stated reason, the inference of discrimination disappears, and the burden of proof shifts back to the plaintiff to demonstrate that the employer's articulated reason for the adverse employment action was merely a pretext for discrimination. *See Rutherford*, 197 F.3d at 180.

       1.    <u>A reasonable jury could find that Plaintiff has established her *prima facie* case.</u>

Plaintiff has presented sufficient evidence in support of each element of her *prima facie* case to meet her *McDonnell Douglas* burden. HABC contends that Plaintiff cannot satisfy her *prima facie* burden because she cannot demonstrate that she was treated less favorably than other similarly situated employees—*i.e.*, that the previous executive directors and the candidate to whom the job was offered are not comparators. To satisfy the fourth element of her *prima facie* case, Plaintiff must show that HABC gave preferential treatment to another employee outside the protected class "under nearly identical circumstances." *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (quoting *Little v. Republic Ref. Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991) (internal quotation marks omitted)). HABC claims that Plaintiff has failed to meet this burden, advancing essentially the same arguments against Plaintiff's Title VII claim that it made against her EPA claim.

As explained above, a genuine issue of material fact exists as to whether Mr. Aleman and General Valenzuela were similarly situated to Plaintiff. That is because the record does not establish as a matter of law whether Plaintiff and Mr. Aleman and General Valenzuela had different job responsibilities such that Plaintiff's and Mr. Aleman's and General Valenzuela's jobs were not "nearly identical." *Id.* at 260 (quoting *Little*, 924 F.2d at 97). But Plaintiff has

presented enough evidence to support her *prima facie* wage discrimination claim that she performed the duties of the executive director position, like Mr. Aleman and General Valenzuela did, and yet was paid less money.

She has also presented sufficient evidence to support her claim that she was discriminated against when she was offered less than Mr. Alcott to serve as the permanent executive director. Title VII prohibits employers from discriminating between employees in terms of pay, but also prohibits discrimination against applicants in hiring and promotion decisions. *See* 42 U.S.C. § 2000e-2 (defining unlawful employment practices to include the failure or refusal to hire an applicant or to otherwise discriminate, including in matters of compensation); *see also Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 342 (2013) (noting that Title VII prohibits discrimination because of sex in, among other things, "hiring, firing, salary structure, promotion and the like"). Thus, for purposes of this claim, in contrast to her EPA claim, Mr. Alcott could also be a comparator. Both Mr. Alcott and Plaintiff were applicants and candidates for the revamped version of the executive director position, yet Mr. Alcott, a man, was offered a higher salary than Plaintiff, a woman.

> 2. <u>Although HABC has proffered evidence of non-discriminatory reasons for the pay disparities, a reasonable jury could conclude that they are pretext.</u>

Because Plaintiff has produced evidence to support her *prima facie* case of sex discrimination, the burden of production shifts to HABC to proffer evidence of a legitimate, non-discriminatory reason for its actions. *See Rutherford*, 197 F.3d at 180. HABC offers two reasons that it contends are non-discriminatory for its actions: (1) Plaintiff was paid less than previous executive directors because she was in an interim, not permanent, position; and (2) Plaintiff was offered a lower salary than Mr. Alcott for the permanent executive director position

because of differences in salary negotiations and fMr. Alcott's different (arguably superior) credentials.

Differences in duties or the temporary nature of the interim position could be a legitimate, non-discriminatory reason sufficient to meet HABC's *McDonnell Douglas* burden with regard to Plaintiff's wage discrimination claim. But, as was explained above in the context of the EPA claim, Plaintiff has identified evidence in the record that generates a fact issue about whether the duties differed in ways that justified the pay differential and whether the position, though dubbed "interim," was *de facto* the executive director position. Thus, a jury should decide this Title VII wage discrimination claim as well.

Likewise, a jury should decide whether Plaintiff was discriminated against when it offered her less than it offered Mr. Alcott to be the permanent executive director. HABC points to the differences in salary negotiations with the two candidates as its legitimate reason for offering Plaintiff less. HABC notes that when Plaintiff was asked to submit a proposed employment contract for the position, she herself proposed a salary of $120,000 per year, which HABC agreed to. (Cavazos Dep. [#21-2] at 20–21; Cavazos' Proposed Employment Contract [#23-7] at 5.) Mr. Alcott, on the other hand, was offered $150,000 and countered with $170,000.00. (Sanchez Dep. [#21-5] at 21–22, 36.) HABC also contends that it was willing to pay Mr. Alcott more because of his superior education credentials and legal and accounting experience, both of which would be non-discriminatory reasons. (Alcott's Executive Director Application [#27-7] at 5–7.) The OIG's memorandum indicated that, as a result of its finances and the lack of adequate supervision by previous executive directors, HABC had violated a number of federal laws and regulations. (OIG's Memorandum [#23-1] at 4–5.) HABC claims that, under these circumstances, Mr. Alcott, who had both an accounting and a law degree, as

well as experience with the San Antonio Housing Authority, was more qualified to address these issues than Plaintiff, who did not have a college degree or any legal experience. (Cavazos' Executive Director Application [#27-4] at 6–7; Alcott's Executive Director Application [#27-7] at 5–7.)

Whether differences in salary negotiations can constitute a legitimate, non-discriminatory reason for paying members of opposite sexes disparate amounts is an open question in the Fifth Circuit. *See Thibodeaux-Woody v. Houston Cmty. Coll.*, 593 F. App'x 280 (5th Cir. 2014) (declining to reach the issue in the context of Title VII and EPA claims). Additionally, Mr. Alcott's law degree and background could be a legitimate, non-discriminatory reason to offer him a higher salary. But, regardless of whether HABC has presented evidence of legitimate, non-discriminatory reasons, Plaintiff has met her burden to produce evidence of pretext.

Specifically, Plaintiff has presented evidence that in deciding how much to offer Mr. Alcott in terms of salary, the Board considered the fact that he had a "stay-at-home wife" and a family to support. (Tr. of Aug. 19, 2015, Board Meeting [#21-11] at 6.) There is also the evidence in the record discussed above, that the Board had at least discussed paying the new executive director at least $150,000 because that is what previous executive directors had earned, and that it had offered that amount to Mr. Alcott without first requiring that he submit a proposed employment contract. Plaintiff has thus met her *McDonnell Douglas* burden, and Plaintiff's wage discrimination claims under Title VII should proceed to trial.

### V. Conclusion and Recommendations

Having considered the motions, the responses and replies thereto, the attached exhibits and declarations, and the remainder of the record, the undersigned recommends that Plaintiff's

Motion for Summary Judgment [#21] be **DENIED** and Defendant's Motion for Summary Judgment [#22] be **DENIED.**

## VI.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this Report and Recommendation must be filed within fourteen (14) days after being served with a copy of same, unless this time period is modified by the district court.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the clerk of the court, and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive, or general objections.  A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the party from a de novo determination by the district court.  *See Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 5th day of March, 2019.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE